IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SHEILA PAULETTE MOLTER,

    Plaintiff,

vs.

MICHAEL J. ASTRUE,
Commissioner of
Social Security,

    Defendant.

No. CIV S-09-1113 GGH

ORDER AND FINDINGS
and RECOMMENDATIONS

        Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"). For the reasons that follow, the court recommends that Plaintiff's Motion for Summary Judgment and/or Remand be granted in part, and this matter be remanded to the ALJ for further findings pursuant to sentence four of 42 U.S.C. §405(g) as directed in this opinion. The Clerk should be directed to enter judgment for plaintiff.

BACKGROUND

        Plaintiff, born October 23, 1954, protectively applied on January 27, 2006 for disability benefits. (Tr. at 135.) Plaintiff alleged she was unable to work due to neck, back,

1

arms, hands, and leg problems. (Tr. at 95.)

In a decision dated October 7, 2008, ALJ Charles D. Reite determined plaintiff was not disabled. The ALJ made the following findings:[1]

    1.    Claimant meets the insured status requirements of the Social Security Act through December 31, 2009.

    2.    Claimant has not engaged in substantial gainful activity since November 8, 2004, the alleged disability onset date (20 CFR 303.1520(b) and 404.1571 *et seq*).

    3.    The claimant has the following severe impairments: mild multilevel degenerative disk disease of the lumbar spine (20 CFR § 404.1520(c)).

    4.    Claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987). The following summarizes the sequential evaluation:

    Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
    Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
    Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
    Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
    Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).
    The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

|   |   |   |
|---|---|---|
| 1 |  | 404.1526). |
| 2 | 5. | After careful consideration of the entire record, I find the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except with limitation to occasional postural limitations, the need for a sit-stand option and preclusion from working at heights and around fast moving equipment. In addition, claimant has a mild limitation in maintaining concentration, persistence and pace secondary to chronic pain (up to 10% of the time). |
| 6 | 6. | Claimant is capable of performing past relevant work as a general office clerk. This work does not require the performance of work-related activities precluded by claimant's residual functional capacity (20 C.F.R. 404.1565). |
| 9 | 7. | Claimant has not been under a disability, as defined in the Social Security Act, from November 8, 2004 through the date of this decision (20 CFR § 404.1520(g)). |

(Tr. at 12-17.)

ISSUES PRESENTED

Plaintiff has raised the following issues: A. Whether the ALJ Failed to Follow Precedent in Evaluating Plaintiff's Pain Testimony; B. Whether the ALJ Failed to Include All Limitations in the Hypothetical Questions to the Vocational Expert; and C. Whether the ALJ Improperly Rejected the Opinion of the Plaintiff's Treating Doctor.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir.1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving

ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

ANALYSIS

<u>Whether the ALJ Improperly Rejected the Opinion of the Treating Physician</u>

Plaintiff contends that the opinion of her treating physician, Dr. Whitmore, was improperly rejected by the ALJ.

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. Holohan v. Massanari, 246 F.3d 1195, 1201 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).[2] Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. An ALJ may reject an *uncontradicted* opinion of a treating or examining medical professional only for *"clear and convincing"* reasons. Lester, 81 F.3d at 831. In contrast, a *contradicted* opinion of a treating or examining professional may be rejected for *"specific and legitimate"* reasons. Lester, 81 F.3d at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (supported by different independent clinical findings), the ALJ

---

[2] The regulations differentiate between opinions from "acceptable medical sources" and "other sources." See 20 C.F.R. §§ 404.1513 (a),(e); 416.913 (a), (e). For example, licensed psychologists are considered "acceptable medical sources," and social workers are considered "other sources." Id. Medical opinions from "acceptable medical sources," have the same status when assessing weight. See 20 C.F.R. §§ 404.1527 (a)(2), (d); 416.927 (a)(2), (d). No specific regulations exist for weighing opinions from "other sources." Opinions from "other sources" accordingly are given less weight than opinions from "acceptable medical sources."

4

may resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). The regulations require the ALJ to weigh the contradicted treating physician opinion, Edlund v. Massanari, 253 F.3d 1152 (9th Cir. 2001),[3] except that the ALJ in any event need not give it any weight if it is conclusory and supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir.1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. Lester, 81 F.3d at 831.

In regard to Dr. Whitmore, plaintiff's treating physician, the ALJ explained:

> I give little weight to the August 2006 opinion of treating physician Cassandra Whitmore, M.D., indicating limitation to a range of work at the sedentary exertional level. Exhibit B-7F. First, Dr. Whitmore's functional assessment is inconsistent with the medical record and other opinions indicating less restrictive exertional limitations. Further, Dr. Whitmore's opinion is inconsistent with the relatively minimal conservative treatment, principally limited to pain medication. In sum, to the extent that Dr. Whitmore's opinion is more restrictive than the above residual functional capacity, I find her opinion to be inordinately based upon claimant's subjective complaints that I find not fully credible. Further, to the extent that the medical records do not support Dr. Whitmore's opinion, I find that she is acting more as an advocate for claimant's social security benefits rather than as an objective medical practitioner.

(Tr. at 16.)

The August 22, 2006 treating physician's report referred to by the ALJ opines that based on plaintiff's degenerative disc disease of the cervical and lumber spine as evidenced by MRIs dated April 6, 2006, and December 6, 2004, plaintiff could only lift and carry up to ten pounds frequently, and 11 to15 pounds occasionally. She could stand and/or walk for two hours in an eight hour day, but for only 15 to 20 minutes without interruption. (Id. at 343.) She could

---

[3] The factors include: (1) length of the treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis; (5) consistency; (6) specialization. 20 C.F.R. § 404.1527

sit for eight hours in a work day but for only 45 minutes without interruption.  The interruption would be to stretch to prevent stiffness.  Plaintiff could climb and kneel occasionally but could not crouch, stoop, bend or crawl.  Plaintiff could not push or pull more than ten pounds, and could not reach above her head regularly, but only ten percent of the time.  (Id. at 344-45.)  Dr. Whitmore predicted that plaintiff's pain would interfere with the attention necessary to perform even simple tasks constantly.  This physician noted that plaintiff required a continuous release Fentanyl patch for pain control, but did not state whether she suffered constant pain despite the patch, or whether it reduced her pain.  She opined that chronic pain would cause her to be absent from work three or more days per month.  All of these limitations were based on plaintiff's degenerative disc disease.  (Id. at 346.)

The older MRI of the lumbar spine relied on by Dr. Whitmore, dated  June 11, 2004, showed mild loss of disc height and mild disc bulge at L3-4, as well as early degenerative changes at L4-5.  (Id. at 275.)  The more recent MRI, dated April 6, 2006, indicated "[m]inor discogenic and degenerative changes, most pronounced at L3-4 where a small tear in the annulus fibrosis is seen.  Borderline spinal stenosis at L3-4.  Questionable borderline spinal stenosis at L4-5 associated with minimal bilateral foraminal narrowing."  (Id. at 299.)  Based on this report, Dr. Whitmore recommended medication, physical therapy and acupuncture.  (Id.)

The ALJ relied instead on the DDS non-examining report and the chiropractor's opinion in regard to plaintiff's residual functional capacity.  (Id. at 16.)  Reliance on the DDS report may constitute substantial evidence "when [non-examining] opinions are supported by other evidence in the record and are consistent with it."  Morgan v. Commissioner, 169 F.3d 595, 600 (9th Cir. 1999).  The DDS physician found on December 13, 2006 that plaintiff could do light work based on medical evidence such as the chiropractor's recommendation that plaintiff could return to light work, as well as objective diagnostic studies which indicated normal neurological

\\\\\

\\\\\

6

findings and little abnormality.[4]  (Tr. at 325-26.)

The DDS report was supported only by the chiropractor report which is not considered an acceptable source but only an "other" source.  The regulations differentiate between opinions from "acceptable medical sources" and "other sources."  For example, licensed physicians and psychologists are considered "acceptable medical sources," and chiropractors and naturopaths are considered "other sources."  20 C.F.R. § 404.1513 (d)(1).  Medical opinions from "acceptable medical sources," have the same status when assessing weight.  See 20 C.F.R. §§ 404.1527 (a)(2), (d); 416.927 (a)(2), (d).  No specific regulations exist  for weighing opinions from "other sources."  Opinions from "other sources" accordingly are given less weight than opinions from "acceptable medical sources."  20 C.F.R. §§ 404.1513(d); 416.913(d).  Therefore, reliance on the opinion of a chiropractor can not constitute substantial evidence, especially when the only other support for it is the opinion of a non-examining DDS physician.  Vela v. Astrue, 2009 WL 2579499, *3 (9th Cir. 2009); Crawford v. Commissioner of Social Security, 363 F.3d 1155, 1160 (11th Cir. 2004).

Here, Dr. Kessler, a chiropractor who examined plaintiff on February 10, 2005, in conjunction with her 2004 worker's compensation claim, found that she could not do heavy work, and was significantly restricted in bending, stooping, lifting, pushing, pulling and climbing.  (Tr. at 503, 513.)  Aside from being an unacceptable medical source, the standards utilized by this chiropractor in plaintiff's worker's compensation case are quite different from the standards utilized in the Social Security context to determine what type of work plaintiff can do.  Furthermore, this chiropractor saw plaintiff one time only, three years before the hearing.  Because Dr. Kessler was an "other source" and because the standards for workers' compensations cases are different than those applicable to Social Security disability cases, this practitioner's opinion could not constitute substantial evidence.

---

[4]  Contrary to the Commissioner's representation, there is no evidence that this doctor examined plaintiff. (Def.'s Oppo. at 3:7; tr. at 325-27.)

   The only other records discussing plaintiff's back condition were those of Dr. Ball in 2004, Dr. Brozell in 2006, and Kaiser treatment records through October, 2007.

   Dr. Ball, a spine surgeon, examined plaintiff in regard to her worker's compensation case, from which she received a settlement. On June 28, 2004, his nurse practitioner diagnosed low back pain with left leg radiculitis and degenerative lumbar disc disease. Pursuant to plaintiff's report of her most recent MRI at the time, dated June 11, 2004, the practitioner also diagnosed lumbar disc herniation. (Id. at 479.) The practitioner noted plaintiff's past treatments which included more than three months of physical therapy with temporary relief, weekly chiropractic care with no relief, steroid injections to hip with no relief, and medication. (Id. at 477.) At the time, plaintiff was taking Darvocet and Relafen for pain. (Id. at 478.) As of August 12, 2004, plaintiff sought to return to work, and Dr. Ball thought that she could gradually work up to eight hours a day. The last notation was Dr. Ball's opinion that plaintiff was not a surgical candidate. (Id. at 467.)

   Plaintiff saw Dr. Brozell at Kaiser on April 20, 2006. He diagnosed greater trochanteric bursitis and evidence of myofascial pain in the hips and cervical spine. He thought her problems were not neurogenic. (Id. at 295.) At this time, plaintiff was taking morphine and Dilaudid. He recommended physical therapy and trigger point injections, as well as psychological intervention. (Id. at 295-96.)

   Kaiser's most recent treatment records indicate that plaintiff was enrolled in a chronic pain program as of April 27, 2007. Her diagnosis at this time was "chronic pain disorder associated with both [] psychological factors and general medical condition." (Tr. at 455.) She reported to the medical practitioner that trigger point injections had only helped initially, that physical therapy had not helped, that she had tried many pain medications but could not tolerate their side effects. At this time she was taking only Relafen. Plaintiff was advised to get steroid injections as needed as well as acupuncture. (Id. at 448.)

\\\\\

On June 13, 2007, plaintiff was diagnosed with cervicalgia, bursitis, degeneration of the cervical and lumbar discs, and diffuse myofascial pain syndrome. Acupuncture treatments were ordered. (Id. at 446.)

It was proper for the ALJ to discount Dr. Whitmore's opinion if it was based on plaintiff's subjective complaints. "An ALJ may reject a treating physician's opinion if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible." Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008), citing Morgan v. Comm'r Soc. Sec. Admin., 169 F.3d 595, 602 (9th Cir. 1999) (citing Fair v. Bowen, 885 F.2d 597, 605 (9th Cir. 1989)). Furthermore, "the ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence." Id.

> Historically, the courts have recognized conflicting medical evidence, the absence of regular medical treatment during the alleged period of disability, and the lack of medical support for a doctor's report based substantially on a claimant's subjective complaints as specific, legitimate reasons for disregarding the treating physician's opinion. Flaten, 44 F.3d at 1463-64; Fair v. Bowen, 885 F.2d 597, 604 (9th Cir.1989). The ALJ is not required to accept the opinion of a treating or examining physician if that opinion is brief, conclusory and inadequately supported by clinical findings. Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir.2002).

Morehead v. Astrue, 2008 WL 3891464, *5 (E.D. Wash. 2008).

In this case, however, Dr. Whitmore's opinion was not based *solely* on plaintiff's subjective complaints. She had at her disposal the aforementioned MRIs, as well as other diagnostic studies. A lumbar x-ray on December 6, 2004 showed a mild disc bulge at L4-5, with mild foraminal stenosis. There was also minimal evidence of facet joint degeneration. (Tr. at 270.) Other x-rays, taken in June, 2004, showed degenerative changes with decreased disc height at L3-4 and L5-S1. (Id. at 479.)

Furthermore, the ALJ incorrectly referred to the record as indicating only minimal conservative treatment, principally limited to pain medication. In fact, the medication she received was not your everyday Tylenol but was serious in nature, and consisted mainly of

narcotics, such as morphine. (Id. at 448.) Moreover, a Fentanyl patch is heavy duty medication prescribed for chronic pain. www.medicinenet.com/fentanyl-transdermal/article. Fentanyl is not prescribed willy-nilly as there are serious potential side effects. Plaintiff did not seek out the narcotics but preferred not to take them due to their adverse side effects. (Id. at 448.) The record indicated that plaintiff tried physical therapy for at least three months, and was interested in re-starting it. (Tr. at 475, 477, 296.) For a period of time, she was not able to get physical therapy, despite trying. (Tr. at 467.) She did experience some relief with massage. (Id. at 507.) She was also scheduled for acupuncture, and had received steroid injections. (Id. at 446, 448, 476.) For some time, plaintiff was receiving chiropractic care once a week. (Id. at 477.) Eventually, plaintiff began going to a chronic pain program. (Tr. at 455.) All this treatment, which includes the entire range of treatment available short of surgery, was not as conservative as the ALJ suggests, and was definitely not limited to pain medication as the ALJ states. More aggressive treatment, such as back surgery, was not recommended. (Id. at 467.)

Finally, the ALJ's statement that Dr. Whitmore was acting as an advocate is not supported. Unlike in Saelee v. Chater, 94 F.3d 520, 523 (9th Cir. 1996), there is no evidence that Dr. Whitmore could not establish an objective medical basis for her opinion. Here, there were several x-rays and MRIs which could objectively support such an opinion. The ALJ failed to point to any other evidence indicating that Dr. Whitmore was acting as an advocate.

Defendant argues that the ALJ was not required to accept Dr. Whitmore's opinion as it is unsupported by the objective imaging tests.[5] Although this may be true, he is not permitted to rely on sources which do not constitute substantial evidence. For this reason, the case must be remanded. On remand, the ALJ may not rely solely on non-examining or "other

---

[5] Studies show that the MRI results indicated in plaintiff's case may or may not cause the degree of pain plaintiff claims to have experienced. See http://orthopedics.about.com/od/hearniateddisc/g/bulge.htm; www.spineuniverse.com/treatments/pain-management/symptomatic-disc-bulges-herniations-without-nerve.

10

source" practitioners in making his decision.[6]

CONCLUSION

For the reasons stated herein, the court finds the ALJ's assessment is not fully supported by substantial evidence in the record. IT IS HEREBY RECOMMENDED that: plaintiff's Motion for Summary Judgment and/or Remand be granted in part, and the Clerk be directed to enter Judgment for the plaintiff. This case should be remanded for further findings, including the potential for sedentary work, pursuant to sentence four of 42 U.S.C. § 405(g).

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within fourteen (14) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen (14) days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS ORDERED that the Clerk of the Court is directed to assign this case to a district judge.

DATED: 06/08/2010                               /s/ Gregory G. Hollows

Molter1113.ss.wpd                               U.S. MAGISTRATE JUDGE

---

[6] Plaintiff also challenges the ALJ's credibility finding. Because the matter is being remanded for further proceedings, the court will not reach this argument. However, on remand, if plaintiff's testimony regarding his subjective complaints is discredited, the ALJ must, in the absence of affirmative evidence showing that plaintiff malingering, set forth clear and convincing reasons for rejecting plaintiff's testimony." Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999). Some of the reasons for discounting plaintiff's credibility already given by the ALJ have been have been refuted in this discussion. For example, Dr. Kessler's preclusion from heavy work was based on worker's compensation standards, not Social Security standards. (Tr. at 16.) Additionally, the ALJ's characterization of plaintiff's treatment as relatively minimal and limited to pain medication is belied by the record. (Id.)
The issue of hypothetical questions to the vocational expert will also not be addressed here as the other issues must first be resolved.